WATTS vs. DOUGLASS.

The verdict of a jury will not be set aside, there being some though slight evidence to sustain such verdict.

APPEAL from Howard Circuit Court.

DAVIS, *for Appellant, insists :*

That the proof was illegal and improper.   He sued the defendant for converting the horse to his own use, in going to a place not known to the plaintiff, at the time the horse was let to the defendant; and in attempting to return on the same day, one day sooner than the plaintiff supposed, in letting his horse, he would be able to return, by which his life is lost.

This evidence was no answer to the action, nor the proof offered by the plaintiff.   Its natural tendency was to produce an effect upon the jury favorable to Douglass.   It may have had an improper influence, to say the least, and being irrelevant, no one can undertake to say how much influence it may have had with the jury.   The verdict should be set aside.   There was no conflict of evidence, as to the terms of letting, proved by Milton Watts; and there is not a shadow of evidence to show that he had an agency from his father, to change the nature of his contract at the time the horse was delivered, as mentioned by C. R. Scott.   Whether the horse was loaned or hired, is not material.   If the terms were broken, and the horse lost, it was a conversion of the horse.   See Story on Bailments, page 407; 5 Mass. Rep., 104; 12 Pick. Rep., 136; 3 Pick., 492.

The instructions asked by the plaintiff Watts, and given by the court, without objection, are a

tacit admission that the evidence objected to, was irrelevant and should not have gone to the jury. The verdict ought to be set aside.

CLARK, *for Appellee, insists:*

1. That the fact whether the horse was hired or loaned, as well as the place he was to be carried, was properly submitted to the jury by the instructions given by the court, and there being evidence, from which a jury might find either way, the verdict ought not to have been disturbed. This is a principle well settled by this Court in various decisions.

2. That if Douglass borrowed the horse, he was bound for strict diligence, and the degree of diligence used, was a matter for the jury; so if he hired the horse, being then bound only for ordinary diligence, in either case, the jury, by their verdict decided in his favor. As to the nature of Bailments, and the degrees of responsibility of Bailees, see Story on Bailments, secs. 234-6 and 7, and 398.

McBRIDE, J., *delivered the opinion of the Court.*

Reuben Watts sued James A. Douglass before a justice of the peace, on an account for one bay horse worth $45, loaned or hired by the former to the latter, the horse having died whilst in Douglass' possession.—Douglass obtained judgment before the justice, when Watts appealed to the Circuit Court, where judgment being against him, he has brought the case here by appeal.

The bill of exceptions contains the evidence given upon the trial in the Circuit Court, and exhibits the following state of facts: Douglass applied to Watts for the hire of a horse, to drive in a buggy to Glasgow, about 12 miles distant. Watts consented to let him have one, provided he would not return on the same day; the horse was sent by Watts' son to Douglass about 8 o'clock in the morning, when the fact was made known to the son, that Douglass would drive the horse to Old Chariton, about two miles from Glasgow, and return on the same evening, when the son remarked, "feed and water the horse, when you get to Old Chariton." Douglass left Fayette about half after eight o'clock in the morning, and reached Glasgow about twelve o'clock, when after a short stay he went to Chariton, where he had the horse put in the stable and fed, and remained until about four o'clock in the afternoon, and then left for Fayette, travelling at the rate of from three to four miles the hour; proceeding about eight miles, the horse was taken sick, perspired very freely, was bled and drenched, and died that night.

At the close of the evidence, the court, at the instance of the plaintiff, instructed the jury as follows:

1. If the jury believe; that Watts loaned or hired the horse to Douglass, to go to Glasgow, and he went to another place, they will find for the plaintiff.

2. If the jury believe, that Watts loaned or hired the horse to Douglass, on the condition that he should not return until the next day, and they find that Douglass attempted to return to Fayette that same day, and the horse died, they will find for the plaintiff, notwithstanding any care and diligence, which Douglass might have used.

And the court gave, at the instance of the defendant, to the jury, the following instruction: That if the jury believe, that Douglass hired or borrowed the horse from Watts, to drive to Chariton, and that he did not carry him in a different route than the one understood between the parties, or in any other particular, violate the contract, and that the horse came to his death, without any negligence or abuse from Douglass, they will find for Douglass.

No exception was taken to the instructions given, and hence they may be regarded as the law of this case. Upon the trial the defendant introduced evidence to prove, that the horse was moderately travelled and well taken care of by him, to which the plaintiff objected, but the court permitted the evidence to be given to the jury, and the plaintiff excepted, and now assigns the same for error. If it be assumed as incontrovertible, that the hiring of the horse, was for the purpose of going to Glasgow, and not to Chariton, and that the trip was made in one day, when the agreement was, that it was to be made in two days, then the testimony was irrelevant, and should not have been permitted to go to the jury; and if this Court could see, that its introduction tended to mislead the jury, to the prejudice of the plaintiff, it would afford ground for reversing the judgment of the Circuit Court. But the instructions asked for by defendant, and given by the court, makes the case to turn mainly on the fact of the hiring being for the purpose of going to Chariton, and if so, then the evidence was entirely legitimate. The jury must have concluded, that the terms of the hiring from the elder Watts, were changed by the assent of his son, when he brought the horse to the defendant; not that there was any evidence of an agency, other than what might be inferred from the relation existing between the father and the son. That the son did assent, that the defendant might drive the horse to Chariton and back on the same day, was a fact in evidence before the jury, and if that assent was authorized by the father, on the relation existing between them, then the evidence introduced, and excepted to, became material in the case, for the purpose of ascertaining the defendant's

liability. The jury having found their verdict upon all the facts of the case, and that finding not being without evidence, we see no grounds for disturbing it.

The judgment is affirmed.